CASE 74—CHANCERY—OCTOBER 18.

# Henderson, &c., vs. Hayne, &c.

APPEAL FROM GRANT CIRCUIT COURT.

1. The proceeding by bill in chancery to contest the validity of a will, prescribed by section 11 of the act of 1797, (2 *Stat. Law*, 1543,) was not—as to wills admitted to probate prior to July, 1852, when the Revised Statutes took effect—repealed by the Revised Statutes, nor by the Civil Code in force at the adoption of the revision; and where such proceeding was commenced prior to the 1st of July, 1854, it is not affected by the amendments to the Civil Code which took effect on that day.

2. The regular mode of inquiring into the reputation of a witness is to ask of those introduced for that purpose whether they know the general reputation of the person in question among his neighbors; and what that reputation is. The inquiry must be as to his general reputation where he is best known, or with those among whom he dwells. And when the impeaching witness is asked for what others say respecting such person, he must be able to state what is generally said by those among whom he dwells *or* with whom he is conversant. But it is not essential to the admissibility of such statements that they should come from those who are both neighbors and personal acquaintances of the party impeached. They are admissible if made either by those who are acquainted with him, or those who dwell in his immediate neighborhood; and the weight to be attached to either class is for the jury to consider and determine.

3. An instruction which confines the jury, in considering the evidence relating to the character of an impeached witness, to such statements respecting his general moral character and principles as have been made by those " among whom he dwells and to whom he is known," is misleading.

4. A testator devised to his wife all his estate "*for her use and benefit during her natural life, that she may be able to raise and educate our little children, &c.*" Held— That she was not invested with an absolute control, free from charge or restraint, over the profits of the whole estate during her life; her life estate has a charge upon it fo r the benefit of the children that were still to be raised and educated. And the validity of the will being contested upon the ground of undue influence exercised by the wife over the testator, it was erroneous for the court in an instruction to the jury to define her right to the estate under the will to be, that she was entitled to all the profits of the estate during her life as *her own property.*

J. O'HARA, JR., for appellants, cited *Rev. Statutes, sec.* 2, *page* 127; *Ib., chap.* 106, *secs.* 28, 26, 38; 18 *B. Mon.,* 259; 15 *B. Mon.,* 34; *Rev. Stat.,* 191, *sec.* 23.

ROBINSON on same side.

G. & R. T. DAVIS, for appellees, cited *sec.* 11, *Act of* 1797, 2 *Stat. Law,* 1543; *Rev. Stat.,* 127, *sec.* 3; *Ib.,* 458, *sec.* 1; *Ib., sec* . 26, *page* 697; *Ib.,* 190, *sec.* 14; *Civil Code, secs.* 875, 121, 9 09; *Ib.,* 2d ed. 1853, *sec.* 661.

Henderson, &c., vs. Hayne, &c.

T. A. MARSHALL, on same side, cited *sec.* 11, *Act of* 1797, 2 *Stat. Law,* 1543; *Rev. Stat.,* 191, *sec.* 23; *Ib.,* 458, *sec.* 1; *Singleton's Will,* 8 *B. Mon.; Rev. Stat., sec.* 26, *page* 697; *Greenleaf Ev., sec.* 461.

W. S. RANKIN, on same side, cited *Rev. Statutes, sec.* 3, *page* 127; *Act of* 1797, *sec.* 11, 2 *Stat. Law,* 1543; *Civil Code of* 1851, *secs.* 661, 740; *Civil Code, sec.* 875; *Rev. Stat., sec.* 14, *chap.* 21; *Civil Code, sec.* 763; 5 *B. Mon.,* 564; 18 *B. Mon.,* 64, 67; 9 *Dana,* 2.

JUDGE STITES DELIVERED THE OPINION OF THE COURT:

This is an appeal from a judgment of the Grant circuit court, vacating and annulling a paper purporting to be the last will of Thomas Henderson, deceased.

The paper, which is written and signed wholly in the handwriting of the decedent, bears date 2d March, 1840, and was duly admitted to probate by the county court of Grant in 1846, shortly after Henderson's death.

The proceeding on which the judgment is founded was by bill in chancery, under the act of 1797, authorizing issues of *devisavit vel non,* (2 *Stat. Law,* 1543,) and was commenced by the appellees in April, 1854.

An objection was taken to the mode of proceeding by demurrer in the circuit court, but was overruled; and a trial was afterwards had upon an issue out of chancery, which resulted in a verdict and judgment against the will.

It is now assigned for error—

1. That the proceeding by bill in chancery was unauthorized, and should have been dismissed.

2. That the circuit court erred in instructing the jury; and

3. That the verdict of the jury was palpably against the evidence.

It is relied in support of the first ground, that the act of 1797, *supra,* was repealed by the act adopting the Revised Statutes; and that since the 1st July, 1852, when they took effect, no proceeding in chancery to contest a will is allowable, except in the cases provided for in the 38th section of the chapter on wills, (*Rev. Stat., p.* 700,) which only authorizes such proceeding after final action by the circuit court upon an appeal from

the county court, as provided for in the preceding sections of the same chapter. And further, that since that time the only mode of contesting the validity of a will once admitted to probate, is by an appeal direct from the county to the circuit court.

On the other hand, it is contended that the provisions of the Revised Statutes, *supra*, do not apply to this nor to any other case in which the will in contest was admitted to probate prior to July, 1852; because, as is said, such cases are within the exceptions of the act adopting the Revised Statutes, and therefore exempt from their operation.

This question has not, that we are aware of, been heretofore presented for adjudication.

In the cases of *McGaughey vs. Henry*, (15 *B. Mon.*, 392;) *Cunningham vs. Cunningham*, (18 *B. Mon.*, 20;) and *Overton vs. Overton*, (*Ib.*, 61,) in which the effect of the Revised Statutes, with regard to wills and proceedings to establish or contest them, was discussed or decided, the wills were admitted to probate after July, 1852; and such was the fact in the case of *Hughey vs. Sidwell*, (18 *B. Mon.*, 259,) though it does not appear in the case as reported, and also in *Hedger vs. Kenney, &c.*, (*MS. opinion, February*, 1859.) Here, however, the probate was before 1852.

The decision of this point will depend wholly upon the effect to be given to the provisions of the act adopting the Revised Statutes in regard to previous laws and rights, and to such other provisions of the revision as indicate how and upon what class of cases it was intended to operate.

The second section of the act of adoption repeals all previous statutes of a general nature adopted prior to November, 1851, except those enumerated in the five sub-divisions of the same section.

The fifth sub-division embraces " statutes regulating proceedings in civil, criminal, and penal cases, not repealed by the Code of Practice or the Revised Statutes."

The third section exempts from the general repeal " any right established, accrued, or accruing before the Revised Statutes take effect; or any prosecution, suit, or proceeding that

Henderson,- &c-, vs. Hayne, &c.

may be pending, except that the proceedings shall hereafter conform, as far as practicable, to the Revised Statutes," &c.

And the 14th section of the chapter on construction (*p.* 190) declares that "no part of the revision is retrospective unless expressly so declared."

It is evident from the foregoing provisions that the revisors and Legislature intended, by the adoption of the revision, in nowise to affect any statute regulating civil, criminal, or penal proceedings, not already changed by the Code of Practice or repealed by the Revised Statutes; but that it was their purpose to leave such statutes in force; and also that they designed cautiously to guard all then subsisting rights, of every conceivable character, from any prejudicial effect resulting from the radical change in our statute laws which was then about to occur. Other similar provisions with respect to existing rights and proceedings, both in the Code of Practice and Revised Statutes, and indicating a like intent, might be referred to if it were deemed necessary.

Now it cannot be denied that the 11th section of the act of 1797, *supra,* is within the class of statutes mentioned in the 5th subdivision of section 2d of the act adopting the Revised Statutes.

It regulates and prescribes the manner of proceeding by bill in chancery to contest a will that has been admitted to probate by a county court. It was, in fact, the only statute in force, prior to the adoption of the Revised Statutes, that authorized such a procedure in behalf of the appellees.

Moreover, this section confers a *right* upon any party interested to institute such a proceeding within seven years next after the probate of the will; and to infants, and others laboring under disabilities, a similar right within seven years after their respective disabilities are removed.

This section was not repealed by the Civil Code in force at the adoption of the revision; for proceedings to establish or contest wills were specially exempted from the operation of its provisions. (*Session Acts,* 1850–1, *vol.* 1, *p.* 203.) And the amendments of the Civil Code, which took effect in July, 1854, do not affect this case, because it was commenced in April,

1854, and by the act adopting them it is provided that proceedings begun prior to July, 1854, are not to be rendered invalid by said amendments. (*Civil Code, sec.* 909.)

Has it been repealed by the Revised Statutes?

It is contended that such is the effect of the several provisions regulating and prescribing the mode of procuring probate of wills and contesting their validity. That such is the effect of the provisions referred to, with regard to wills taking effect and admitted to probate after the Revised Statutes went into operation, cannot be denied; and it was so held in the cases of *Overton vs. Overton, Hughey vs. Sidwell*, and *Hedger vs. Kenney, &c., supra*, for the obvious reason that the rights of the parties in those cases accrued after, and not before the revision took effect. Its provisions furnished a complete remedy for the assertion of those rights; and all the incipient steps were taken under and in pursuance of them.

It seems to us, however, that an application of the provisions referred to, to a case in which the will was not only made, but took effect and was admitted to probate prior to the adoption of the revision, would not only be violative of the rights of the parties that had accrued under it, but would be in disregard of the manifest intent of the Legislature, as expressed in the provisions just cited, which were made to exempt all pre-existing rights and regulations affecting them from the changes then contemplated.

We do not controvert the power of the Legislature to alter or modify rules for the enforcement of existing rights. Nor do we doubt that an intent to make such alteration may be assumed from subsequent legislation inconsistent with the previous law on the same subject; nor that the effect of such legislation is to repeal the previous law. The conclusion just stated is not at all at variance with these well established principles. The question here is, not as to the power of the Legislature, nor the constructive repealing operation of the acts mentioned, but whether the act adopting the revision, and the revision itself, have not, in terms, exempted the class of cases referred to from the operation of any section of the revision.

A recurrence to the acts is sufficient, we think, to remove any doubt upon this subject. The act of 1797, *supra*, so far as it

provided for a proceeding in chancery to contest a will, was, as we have already seen, an act regulating a civil proceeding. It is, therefore, within the exception contained in the fifth subdivision of the second section of the act of adoption, *supra*. By the terms of this act of 1797, a *right* to contest a will by bill in chancery, within *seven* years after probate, was conferred on all parties interested, and continued for a like period to infants and others laboring under disabilities after the removal thereof. Whatever this right may be denominated, whether remedial, vested, accrued, or accruing, it was, nevertheless, a right, and pertained to those interested in the will. So that it cannot be excluded from the comprehensive saving of the third section of the act of adoption, *supra*, which embraces every class or description of rights, and exempts them all from the operation of the revision, which would, except for the savings referred to, reduce the period of limitation, and otherwise materially affect the right accruing under the act of 1797.

All difficulty resulting from the supposed constructive repeal of the act of 1797, by reason of the subsequent regulations of the revision on the same subject, is removed by the fourteenth section of the chapter on construction, *supra*, which provides in terms, that " no part of the revision is retrospective unless expressly so declared."

There is no such declaration of retrospective operation in any of the provisions of the revision on the subject of wills; and they cannot, therefore, be considered as applying to cases arising prior to their adoption.

Our opinion, therefore, is, that there was no error in overruling the demurrer to the bill; and that the mode of proceeding adopted was authorized by law, and proper.

It seems to us, however, that the circuit court erred to appellants' prejudice in allowing the first and third instructions asked for by the contestants of the will.

The first instruction is as follows : " The credit of any witness in the case may be impeached by proof of his general bad character; but the only legal evidence of bad character is by other witnesses, who know and are able to state what is generally said of the character of the witness attempted to be

impeached by those among whom he is known; and proof of particular facts against the impeached witness, and of what others or persons have said against him, is to be wholly disregarded by the jury; unless such proof is what is generally said of such impeached witness' moral principles and moral conduct by those *among whom he dwells and to whom he is known.*"

It is not very certain, from the phraseology of this instruction, what precise rules were intended to be furnished to the jury for their guidance with respect to the weight they should give to the evidence impeaching the appellees' witnesses—the language is somewhat involved, and calculated to confuse rather than enlighten the jury. But this is not the only objection to the instruction. It confines the jury, in considering the evidence relating to the character of the impeached witnesses, to such statements respecting their general moral character and principles, as have been made by those "among whom he dwells *and to whom he is known.*" This, we think, was clearly misleading, if not erroneous.

The regular mode of inquiring into the reputation of a witness, is to ask of those introduced for that purpose whether they know the general reputation of the person in question among his neighbors; and what that reputation is. The inquiry must be as to his general reputation where he is best known, or with those among whom he dwells. And when the impeaching witness is asked for what others say respecting such person, he must be able to state what is generally said by those among whom he dwells *or* with whom he is conversant. But it is not essential to the admissibility of such statements that they should come from those who are both neighbors and personal acquaintances of the party impeached. They are admissible if made either by those who are acquainted with him, or those who dwell in his immediate neighborhood, and the weight to be attached to either class is for the jury to consider and determine.

The third instruction is erroneous in defining the rights of Mrs. Henderson under the will, and was well calculated to prejudice her on the trial of the issue formed.

It says that "she is entitled to all the profits of the whole estate disposed of by and according to the second clause of

said writing, for and during the period of her life, as *her own property.*" Thus inducing the conclusion on the part of the jury, that by the exercise of her influence she procured the testator to invest her with an absolute control, free from charge or restraint, over the profits of the whole estate during her life.

The will confers no such power or interest upon her. It gives her a life estate, it is true, but it creates a charge upon such life estate for the benefit of the children that were still to be raised and educated; and to that extent imposes a duty and trust upon her, the performance of which could be enforced in behalf of the children; thus showing very clearly that the testator, though willing to intrust her with the raising and education of his children, was unwilling to place it in her power, or in the power of any one else, to deprive them of appropriate culture and education.

The clause of the will referred to reads as follows, and is susceptible, in our opinion, of no other construction.

" I give and bequeath to my beloved wife, Hannah Henderson, all my estate, personal, perishable, and real, consisting of lands, negroes, stock, household and kitchen furniture, together with all moneys due me, either by bond, note, open or book account, as well as every article of every description of property that I may own at my death, for *her use and benefit during her natural life, that she may be able to raise and educate our little children, &c.*"

The effort in the circuit court was to show that Mrs. Henderson had entire control over her husband, and by the undue exercise of this control procured the execution of the will in contest; and the prejudicial effect of the instruction referred to upon her rights, in an issue of that character, is too manifest to need further remark.

In regard to the third and last ground, to-wit: that the verdict was not sustained by the evidence, we have to say, that, were we called upon as jurors to pass upon the facts, our conclusion might be altogether different; but that, inasmuch as there were errors committed by the court which entitled the appellants to a new trial, and which saves us from the necessity of considering the evidence with a view to its weight and effect,

we deem it proper to abstain from an expression of opinion in regard thereto.

For the error in the instructions the judgment is reversed, and cause remanded for a new trial, and further proceedings not inconsistent with this opinion.