*L. McQuown, J. W. Compton, for appellant.*

---

LEWIS SKAGGS *v.* COMMONWEALTH.

**Criminal Law—Impeachment of Witness.**

> A witness may be impeached by proving statements made by such witness out of court which are contradictory to those sworn to by the witness in court; but a statement made out of court cannot be proven for such purposes unless the same contradicts the statement made in court.

**Self-Defense.**

> Where after an altercation the deceased went away and was entirely out of danger, and then voluntarily returns with the avowed purpose of renewing the fight, and in attempting to carry out such purpose lost his life by being shot by the accused, the accused's right of self-defense was as perfect as if he had not fired at the deceased in the former encounter. He was at his home, and was not bound to retreat, and if he believed and had reasonable ground to believe that if he stood his ground the deceased would take his life or do him serious bodily harm, he had a right to shoot, and is excusable on the ground of self-defense and apparent necessity.

APPEAL FROM ELLIOTT CIRCUIT COURT.

February 19, 1880.

OPINION BY JUDGE COFER:

The witness, R. L. Rose, was asked if he knew the general character of Martha Skaggs. He answered that he did, and that it was bad,—that she was not worthy of credit on oath.

The regular mode of inquiring into the reputation of a witness is to ask the impeaching witness if he knows the general reputation of the person in question among his neighbors, and what that general reputation is; the inquiry must be as to his general reputation where he is best known, or with those among whom he dwells. *Henderson v. Hayne, 2* Met. 342.

There is a marked distinction between reputation and character. One is what the person is esteemed to be, the other what he actually is. If I am asked what the reputation of a person is I understand at once that I am not asked to say what I think of him, but what other people think. If asked what his character is I am liable at least to suppose that my own opinion is asked for. And observation has taught every lawyer that witnesses generally, when asked as to the general moral character of another person, understand that their own opinion is being asked for, and if they are at all hostile to the person inquired about they are frequently prompt and even eager to express their own opinions; and not infrequently, when made to understand that it is not their opinions but the opinions of the neighbors and acquaintances generally of the person in question, they are compelled to admit that they do not know, or the fact that they do not is brought out on the cross-examination.

Mrs. Skaggs stated in her testimony before the jury that the appellant told the deceased not to come any nearer, and deceased stepped forward and appellant shot him. The commonwealth was then permitted to prove that she had stated out of court that appellant "dared" the deceased to come further, and when he stepped forward shot him. This was competent. The statement made by her to the jury was material in the defense as showing that the deceased was warned off, and that the appellant acted in self-defense. The statement made by the witness out of court was inconsistent with the affirmative statement in court, and was competent to contradict the witness.

The rule is that when a witness merely fails to prove a fact

beneficial to one of the parties that party cannot contradict him by proof that he made a different statement at another time. *Champ v. Commonwealth*, 2 Met. 17. That would be to make the statement of the witness out of court evidence of a fact he refused to testify to in court. Nor can a witness be contradicted by asking him if a fact does not exist, and if he says "no" proving that he said out of court that it did exist. But the fact testified to by the witness, viz.: that the appellant told the deceased not to come any nearer, was wholly inconsistent with her alleged statement out of court, and proof of this latter statement directly contradicted the statement made by her before the jury.

The evidence for the admission of which *Kennedy v. Commonwealth*, 14 Bush 340, was reversed "did not serve to explain, modify, or contradict anything he (Higgins) had testified to on his direct examination" (page 357), and hence the evidence to prove his statements out of court was held incompetent.

The evidence showed without contradiction that the deceased fired his gun after he passed the house, and that the appellant and his brother fired at deceased and his party. But it also showed that the deceased went beyond the range of the prisoner's fire and was some moments entirely out of sight and out of danger; that the appellant and his brother had ceased firing; that the rencounter was at an end; and, that the parties were separated by a distance probably exceeding one hundred yards. All danger to either party was passed and neither could be hurt by the other unless one or both sought to renew the combat. The evidence was equally uncontradicted that the deceased returned, gun in hand, toward where the appellant was at his home, and cursed and denounced him and invited him out to fight.

His companion, Croft, who appears to have been largely responsible for the loss of the life of the deceased, does not contradict the statements of Kelly and Mrs. Skaggs that deceased invited the appellant out to fight, nor does he deny that he directed the deceased to hold his fire and make a sure shot. Susan Skaggs swore that she heard that remark, and the evidence warrants the conclusion that the appellant heard it also. There was no evidence whatever that the appellant or his brother did anything to bring on this last rencounter, and the instructions 6 and 7 were misleading in so far as they submitted that hypothesis to the jury. That feature of these instructions was calculated to create upon the mind of the jury

the impression that the court was of the opinion that there was some evidence conducing to prove that the appellant or his brother did something to provoke the threatening attitude of the deceased at the time he was shot; or they may have supposed that if the appellant or his brother shot at the deceased as they went away from the house, and that caused the deceased and Croft to return, that was bringing on the combat within the meaning of the court's instruction.

It does not matter that they may have fired at the deceased as he rode away. He went entirely out of danger, and having voluntarily returned with the avowed purpose to renew the fight, the appellant's right of self-defense was as perfect as if he had not fired some moments before. He was at his home and was not bound to retreat, but might stand his ground, and if he believed and had reasonable ground to believe that, if he stood his ground, the deceased would proceed to take his life, or to do him serious bodily harm, he had a right to shoot, and is excusable on the ground of self-defense and apparent necessity.

Adams was permitted to state that he had heard Joseph Skaggs say that he would be bound to swear that he would not believe Mrs. Skaggs on oath. This, though clearly incompetent, does not appear to have been objected to. There was other illegal evidence to which no objections seem to have been made.

For the errors indicated the judgment is *reversed,* and the cause is remanded for further proper proceedings.

*J. R. Botts, for appellant. Hardin, for appellee.*